1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEHU HAND, | Case No.  1:20-cv-00784-BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| v. | |
| YOUNG, *et al.*, | ORDER DIRECTING THAT THE LODGED FIRST AMENDED COMPLAINT BE FILED |
| Defendants. | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION WITHOUT LEAVE TO AMEND FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF |
| | (ECF No. 20) |
| | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Jehu Hand ("Plaintiff") is a former federal prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant *to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Before the Court could screen Plaintiff's complaint, Plaintiff lodged a first amended complaint on May 3, 2021.  (Doc. 20.)  The Court will order the first amended complaint filed, and it is currently before the Court for Screening.

### I.      First Amended Complaint

Pursuant to Federal Rule of Civil Procedure 15, leave to amend should be "freely" given when "justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme

1

1    liberality." *Eminence Capital, LLC, v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003) (citation

2    and internal quotation marks omitted). See Fed. R. Civ. P. 15(a) (a party may amend once as a

3    matter of right, but must seek leave of court for further amendments). The Court will direct the

4    Clerk of Court to file the lodged first amended complaint. (Doc. 20.)

5    **II.    Screening Requirement and Standard**

6    The Court is required to screen complaints brought by prisoners seeking relief against a

7    governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. §

8    1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or

9    malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief

10   from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. §

11   1915(e)(2)(B)(ii).

12   A complaint must contain "a short and plain statement of the claim showing that the pleader

13   is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but

14   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

15   do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell*

16   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's

17   allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v.*

18   *Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation

19   omitted).

20   Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings

21   liberally construed and to have any doubt resolved in their favor.  *Hebbe v. Pliler*, 627 F.3d 338,

22   342 (9th Cir. 2010) (citations omitted).  To survive screening, Plaintiff's claims must be facially

23   plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each

24   named defendant is liable for the misconduct alleged, *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949

25   (quotation marks omitted); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

26   The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with

27   liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949

28   (quotation marks omitted); *Moss*, 572 F.3d at 969.

2

### III.    *Bivens* Actions Following *Ziglar v. Abbasi*

Plaintiff is a federal prisoner proceeding under *Bivens*.  To date, the Supreme Court has only recognized a *Bivens* remedy in the context of the Fourth, Fifth, and Eighth Amendments. *See Bivens*, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment).  The Supreme Court has recently made clear that "expanding the *Bivens* remedy is now a disfavored judicial activity," and has "consistently refused to extend *Bivens* to any new context or new category of defendants.  *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017) (citations omitted).

If a claim presents a new context in *Bivens*, then the court must consider whether there are special factors counseling against extension of *Bivens* into this area. *Ziglar*, 137 S.Ct. at 1857.  The Supreme Court's precedents "now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'"  *Id.* Thus, "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Id.* at 1857–58.  This requires the court to assess the impact on governmental operations system-wide, including the burdens on government employees who are sued personally, as well as the projected costs and consequences to the government itself.  *Id.* at 1858.  In addition, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."  *Id.*

### IV.    Plaintiff's Allegations

Plaintiff currently is out of custody. The events in the complaint are alleged to have occurred while Plaintiff was housed at the Mendota Federal Correctional Institution, in Mendota, California ("Mendota").  Plaintiff names the following defendants:  (1) Scott Young, Warden or Former Warden, (2) Christian Lepe, Warden or Former Warden, (3) Rafael Zuniga, Warden or Former Warden, (4) Michael Carvajal, Acting Director of Bureau of Prisons ("BOP"), (5) Melissa Rios, Director of Western Region of BOP, (6) Federal Bureau of Prisons, and (7) Does 1-20.

1   Each individual is sued in their individual capacities.

2   Plaintiff alleges that each Defendant violated Plaintiff's constitutional rights by taking

3   actions that they knew or reasonably should have known would violate Plaintiff's rights. From

4   April 17 to November 4, 2020, Plaintiff was under a lockdown at Mendota because of COVID 19.

5   He was allowed out of his cell only 30-45 minutes per day, and on Sundays for 60 minutes.

6   During this time Plaintiff had to shower, call family or friends, take care of legal business, etc.

7   The time was inadequate. Plaintiff requested additional time for legal research.

8   On April 17, 2020, Plaintiff was transferred from Taft Correctional Institution, a

9   minimum-security facility, to Mendota, a medium security facility. While at Taft, Plaintiff had

10  almost total freedom of movement from 6 am to 9 pm. Once at Mendota, Plaintiff was

11  quarantined for 14 days and then transferred to Unit C-2 with capacity for 122 inmates. He was

12  locked down for nearly 23 hours a day. There was no book cart, no recreational activities were

13  permitted, and walks were cancelled, ostensibly due to COVID. Only 10 inmates were allowed

14  the common area at a time, which could have been increased because they were not to full

15  capacity of housing inmates.

16  Staff were mandated to wear face masks, although this requirement was disregarded.

17  There was serious COVID outbreak in July 2020, with 22 infected inmates, which was covered

18  up. Plaintiff was in a risk profile; age 64 and obese. Plaintiff was required to remain, in effect, in

19  solitary confinement at Mendota for an indefinite time. This is cruel and unusual punishment.

20  Plaintiff filed three habeas petitions – one was dismissed; the second challenged the denial

21  of Plaintiff's application to a halfway house and the third, under the First Step Act ("FSA"),

22  challenged loss of good time credits. Plaintiff mailed his analysis of the FSA to National Institute

23  of Justice stating that BOP was not correctly implementing the FSA.

24  Plaintiff qualified under the factors of then Attorney General William Barr's directives for

25  release of minimum-security prisoners such as Plaintiff. The factors mandated, among other

26  things, all BOP facilities especially those with active COVID infections expedite releases for

27  eligible low and minimum inmates. Plaintiff qualified under all of the factors. Plaintiff made a

28  formal request to be evaluated. On May 11, 2020, Plaintiff asked Unit Manager Angelica

4

Rodriguez was he was being evaluated.  She told Plaintiff t hathe was at the "top of the list." Every week, other inmates were released under the directive who were not as qualified as Plaintiff for release.  Only after Plaintiff filed this lawsuit was he released.

Mendota exhibited a pattern of noncompliance.  Plaintiff did not receive a single written response on his 20 grievances. Letters from his spouse were rejected by the mail room. The mailroom denied copies of his legal papers for preparation of a reply brief in his appeal of his criminal conviction.  He did not get responses for requests for computer time, for pen and paper, for certification of his trust account, incoming mail.

Plaintiff alleges, on information and relief, that Defendants Carvajal, Rio, Young, Lepe, and Zuniga, knowing of Plaintiff's 2241 petitions or his letter to the National Institute of Justice, took action in retaliation of Plaintiff's exercise of First Amendment rights: instructed Young, Lepe and Zuniga to block incoming mail to Plaintiff from the US Attorney's office and to not respond to Plaintiff's administrative requests; instructed Region and Mendota staff, including Rios, Young, Lepe and Zuniga to cease evaluation for Plaintiff's release under the Directives; instructed Young, Lepe and Zuniga to not grant additional legal research time; instructed Young, Lepe and Zuniga, to not provide Plaintiff with trust certification to hinder Plaintiff's exercise of his right to access the Courts.

In Claim 1, Plaintiff alleges retaliation in violation of the First Amendment against Carvajal, Young, Lepe, Zuniga and Rios. They had a duty to expeditiously evaluated Plaintiff under the CARES Act and the Directive and did not do so in retaliation for exercising his First Amendment rights.

In Claim 2, Plaintiff alleges violation of First, Fifth and Sixth Amendment against Carvajal, Rios, Young, Lepe and Zuniga.  Defendants prevented Plaintiff from receiving mail, including mail for his legal files.

In Claim 3, Plaintiff alleges Deliberate Indifference to risk of serious injury by Carvajal, Rios, Young, Lepe and Zuniga for causing Region and/or Mendota staff to fail to evaluate Plaintiff for early release on home confinement which exposed Plaintiff to the risk of contracting COVID.  One or more of the Defendants participated in or directed the violation of Plaintiff's

1   right.

2          In Claim 4, Plaintiff alleges violation of Plaintiff Due Process under the Fifth and Sixth

3   Amendments against Carvajal, Rios, Young, Lepe and Zuniga for restricting Plaintiff's access to

4   legal mail regarding his habeas petition, access to legal materials, trust account certification.  He

5   was unable to prepare a reply brief in his appeal.

6          In Claim 5, Plaintiff alleges his confinement of 23+ hours a day locked down with no

7   books or recreation time was cruel and unusual punishment in violation of the Eighth

8   Amendment.

9          For relief, Plaintiff seeks compensatory damages and other relief.

10         **V.       *Bivens* action and Limitations on Extending under *Ziglar v. Abbasi***

11         Plaintiff's contentions include claims under the First, Fifth, Sixth, and Eighth

12   Amendments.  He claims his rights were violated because he was not evaluated for early release,

13   which was deliberately indifferent to risk of injury from COVID,[1] was retaliated against when he

14   complained, was denied access to his mail which inhibited his ability to represent himself, and his

15   conditions of confinement locked him down with minimal to no out of cell time.  Each of these

16   claims presents new *Bivens* contexts. Because a *Bivens* remedy has never been recognized in the

17   contexts that Plaintiff alleges here, the Court must determine whether to extend the *Bivens*

18   remedy to Plaintiff's claims.

19         To make that determination, the Court must first consider whether there is "any

20   alternative, existing process for protecting the interest." *Wilkie v. Robbins*, 551 U.S. 537, 550, 127

---

[1] Plaintiff couches part of his Eighth Amendment claim as deliberate indifference to medical need.  However, Plaintiff does not allege that he was in need of medical attention. Rather, his concern was the potential exposure to COVID while incarcerated, which is a conditions of confinement claim.  *See Sanford v. Eaton*, No. 1:20-CV-00792 BAM(PC), 2021 WL 3021447, at *6 (E.D. Cal. July 16, 2021) (challenges to housing, transfers and other similar policies under the Eighth Amendment claims are conditions of confinement claims rather than a deliberate indifference to serious medical needs). Since Plaintiff fails to allege a serious need, his claim is not one of deliberate indifference to medical need. The government must give medical care to incarcerated persons. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). Failure to do so can constitute an Eighth Amendment violation. *Id.* In order to prevail on an inadequate medical care claim, a plaintiff must show "deliberate indifference to his serious medical needs." Id. (internal quotation marks omitted). In the Ninth Circuit, the test for deliberate indifference consists of two parts. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* (citations and internal quotation marks omitted). "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Id.*

S.Ct. 2588, 168 L.Ed.2d 389 (2007). The existence of an alternative remedial scheme "amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* Next, the Court must evaluate whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson v. Green*, 446 U.S. 16, 18 (1980)). While the Supreme Court has not defined the phrase "special factors counselling hesitation," the inquiry should consider "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857-58. Specifically, the Court should consider the substantial defense costs created by personal-capacity claims against federal employees, as well as the "time and administrative costs attendant upon intrusions resulting from the discovery and trial process." *Id.* at 1856.

Both the existence of alternative remedial processes and other special factors counselling hesitation weigh against extending the *Bivens* remedy to Plaintiff's First, Fifth, Sixth, and Eighth Amendments claims proposed in Plaintiff's case. First, federal prisoners have numerous alternative remedies available to them, including the Federal Tort Claims Act[2] and the Bureau of Prison's administrative grievance process. See 28 U.S.C. §§ 1346(b)(1), 2674 (allowing an inmate to seek money damages for personal injuries and property claims arising out of a federal employee's negligence or wrongful conduct); 31 U.S.C. § 3724(a) (allowing the Attorney General to settle claims for personal injuries and damages or lost personal property caused by federal law enforcement); 28 C.F.R. § 542.10(a) (establishing administrative-grievance procedure for "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement"). The Ninth Circuit has recognized the adequacy of these alternative remedial schemes with regard to prisoners' First Amendment claims. *See Buenrostro v. Fajardo*, 770 F. App'x 807, 808 (9th Cir. 2019) (declining to extend Bivens remedy for a prisoner allegedly punished for pursuing

---

[2] In 1946, Congress passed the Federal Tort Claims Act, "which waived the sovereign immunity of the United States for certain torts committed by federal employees." *Brownback v. King*, ⸺ U.S. ⸺, 141 S. Ct. 740, 746, 209 L.Ed.2d 33 (2021) (quoting *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)); see 28 U.S.C. §§ 1346(b)(1), 2674.

1  grievances and litigation);[3] *Vega v. United States*, 881 F.3d 1146, 1152-54 (9th Cir. 2018)

2  (declining to extend *Bivens* remedy for a prisoner alleging his access to the courts was cut off due

3  to filing lawsuits). Although Plaintiff contends that some of his appeal remedies were not

4  available, the mere fact that he was not successful in obtaining relief through such program "does

5  not mean that he did not have access to alternative or meaningful remedies." *Vega*, 881 F.3d at

6  1155.

7      The Supreme Court has never recognized a Bivens remedy under the First Amendment

8  and the Ninth Circuit has also refused to extend a Bivens remedy to a claim under the First

9  Amendment. *Reichle v. Howards*, 566 U.S. 658, 663 n.4, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d

10  985 (2012) (citing *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937; *Bush v. Lucas*, 462 U.S. 367, 368, 103

11  S. Ct. 2404, 76 L. Ed. 2d 648 (1983)); *Lee v. Matevousian,* 2018 WL 5603593, at *3-4 (E.D. Cal.

12  Oct. 26, 2018) (declining to infer *Bivens* remedy for First Amendment retaliation and denial of

13  access to courts claims); *See Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648

14  (1983)(the Court refused to extend *Bivens* to allow a federal employee to sue his supervisor for

15  retaliatory demotion under the First Amendment.).  Since *Ziglar v. Abbasi*, the Ninth Circuit has

16  declined to extend the *Bivens* remedy to claims brought under the First Amendment. *See Schwarz*

17  *v. Meinberg*, 761 F. App'x 732, 734-35 (9th Cir. 2019) (finding denial of access to courts claim

18  was a "new *Bivens* context" and declining to extend private right of action).[4]

19      Moreover, the Supreme Court has never implied a *Bivens* action under the Fifth

20

21  [3] Even if a *Bivens* claim could be extended, Plaintiff's allegations of retaliation are entirely conclusory.
Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for

22  doing so." *Watson v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th
Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1)

23  An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected
conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did
not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). To

24  state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected
activity. *Grenning v. Klemme*, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).  Here, although Plaintiff contends that he

25  was subjected to retaliation, Plaintiff's allegations are insufficient to demonstrate any "adverse action" that chilled
Plaintiff First Amendment rights and that did not reasonably advance a legitimate correctional goal. Plaintiff's

26  conclusory allegations are insufficient to state a claim.

27  [4] Even if such allegations could support a *Bivens* claim, here, the allegations would be substantively insufficient. "To
establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual

28  injury." *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011).

Amendment generally or specifically relating to Due Process violations for alleged improper handling or reading of prisoner mail. *See Ziglar v. Abbasi*, 137 S. Ct. at 1854-55. For seizure and removal of mail, Due Process is not violated when a federal prisoner's personal property is destroyed so long as an adequate post-deprivation remedy is available for the unauthorized act. *Marulanda v. U.S. Marshals Serv.,* 467 F. App'x 590, 591 (9th Cir. 2012) (citing, inter alia, 31 U.S.C. § 3724(a), which allows the Attorney General to settle claims for losses caused by law enforcement personnel). The Supreme Court has never held that *Bivens* extends to constitutional violations for denial of access to counsel under the Sixth Amendment. *Turner v. Langford*, No. CV1703146VBFRAO, 2020 WL 4001621, at *5 (C.D. Cal. Mar. 13, 2020)

In addition, Plaintiff's claims under the Eighth Amendment's Cruel and Unusual Punishment Clause arising from allegedly unconstitutional conditions of his confinement present a new *Bivens* context.[5]  Plaintiff's claims are similar in context to the claims for which the Supreme Court rejected an expansion of *Bivens* liability in *Abbasi*. See *Ziglar v. Abbasi*, 137 S. Ct. 1843 (alleging civil rights conspiracy against federal executive officials and detention facility wardens, alleging that plaintiffs were physically and verbally abused, subjected to arbitrary strip searches, and subjected to prolonged detention.); see, e.g., *Schwarz v. Meinberg*, 761 Fed. Appx.

---

[5] Plaintiff is suing each defendant for their supervisory role.  Insofar as Plaintiff is attempting to sue the named Defendants, or any other defendant, based solely upon his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must...demonstrate that his deprivation resulted from an official policy or custom established by a...policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See *Fayle v. Staple*y, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). There are no allegations other than conclusory allegations that each of the Defendants directly participated in the alleged constitutional violations.

732, 734-75 (9th Cir. Feb. 13, 2019) (finding an Eighth Amendment claim for unsanitary prison cell conditions to be a new context that "resembles the conditions of the [sic] confinement claim the Supreme Court rejected in *Abbasi.*"); *see also Mercer v. Matevousian*, 2018 WL 3917969, at \*4 (E.D. Cal. Aug. 14, 2018) (finding that an Eighth Amendment conditions-of-confinement claim for failure to provide a handicap accessible shower is a new *Bivens* context).

The Supreme Court has refused to extend *Bivens* in Fourth and Fifth amendment cases.  In *Ziglar v. Abbasi*, the Supreme Court considered whether to extend an implied damages remedy to the plaintiffs' claims that they were denied "due process and equal protection rights by holding them in restrictive conditions of confinement; the claims further allege that the Wardens violated the Fourth and Fifth Amendments by subjecting respondents to frequent strip searches." *Ziglar*, 137 S. Ct. at 1858. The Court declined to find a *Bivens* remedy existed for the plaintiff's claims that the detention policies violated the Fifth Amendment. Id. at 1859-63.  The Supreme Court has never held there is a constitutional right to early release from a term of imprisonment.  *See Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (in order to state a claim for damages for an allegedly unconstitutional conviction or term of imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff asserting a violation of 42 U.S.C. § 1983 must prove that the conviction or sentence has been reversed or declared invalid.); *See Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

The Court now turns to whether issues concerning separation of powers and other "special factors" counsel hesitation. Tellingly, Congress "addressed the question of prisoners' remedies in the Prison Litigation Reform Act of 1995" and omitted a damages remedy, *Buenrostro*, 770 F. App'x at 808, which suggests that "Congress might doubt the efficacy or necessity of a damages remedy" against federal jailers, *Abbasi*, 137 S. Ct. at 1858. But insofar as Congress, through the FTCA and § 1983, has not provided a remedy to federal prisoners, the separation of powers

1   commands that this court must respect that silence. *See Oliva v. Nivar*, 973 F.3d 438, 444 (5th

2   Cir. 2020) (the "silence of Congress" is a special factor counseling hesitation) (quoting *Abbasi*,

3   137 S. Ct. at 1862). Especially because, as the FTCA and § 1983 demonstrate, "Congress ...

4   knows how to create a cause of action to recover damages for constitutional violations when it

5   wishes to do so." *Hernandez v. Mesa*, 140 S. Ct. 735, 752, 206 L.Ed.2d 29 (2020).

6       Moreover, Plaintiff's claims implicates significant separation of powers concerns vis-à-vis

7   prison administration and implying a new *Bivens* remedy for such claims would undoubtedly

8   impose a large burden on the judiciary and prison officials. *Cox v. United States*, 2019 WL

9   5580966, at *8 (C.D. Cal. Aug. 30, 2019), report and recommendation adopted, 2019 WL

10  5579533 (C.D. Cal. Oct. 29, 2019). Significantly, Plaintiff's claim arise from the prison

11  administration's considerations for early release and decisions related to effective management of

12  prison populations in light of the COVID pandemic.  *See Reeb v. Thomas*, 636 F.3d 1224, 1228

13  (9th Cir. 2011) ("inmates do not have a protected liberty interest in either RDAP participation or

14  in the associated discretionary early release benefit.")

15      This Court finds that extending *Bivens* to Plaintiff's First, Fifth, Sixth and Eighth

16  Amendment claims would substantially affect government operations and unduly burden federal

17  officials who must defend against this suit in their personal capacities. *Schwarz v. Meinberg*, 761

18  F. App'x 732, 735 (9th Cir. 2019) (declining to extend *Bivens* remedies to a plaintiff's access to

19  courts claim under the First and Fifth Amendments and a Fifth Amendment claim regarding

20  denial of plaintiff's request for camp placement); *see also Anderson v. Creighton*, 483 U.S. 635,

21  638 (1987) ("[P]ermitting damages suits against government officials can entail substantial social

22  costs, including the risk that fear of personal monetary liability and harassing litigation will

23  unduly inhibit officials in the discharge of their duties.) Accordingly, the Court finds special

24  factors counsel hesitation in this context and declines to find an implied *Bivens* claims for the

25  claims alleged.

26      Accordingly, the Court should decline to imply a new Bivens remedy for plaintiff's First,

27  Fifth, Sixth and Eighth Amendment claims.[6] Accordingly, the Court finds special factors counsel

28

---

[6] Plaintiff would not be permitted to proceed on misjoined claims in any event.  Plaintiff may not bring unrelated

11

hesitation in this context and recommends declining to find implied *Bivens* claims. Consequently, Plaintiff has failed to state a cognizable claim against the named defendants. Since this is a deficiency that cannot be cured by amendment, the Court concludes that granting leave to amend would be futile.

### VI.   Conclusion and Recommendations

The Court directs the Clerk of Court to file the lodged First Amended Complaint. (Doc. 20.)

The Court HEREBY ORDERS the Clerk of the Court to randomly assign a district judge to this action.

Further, the Court finds that a *Bivens* remedy should not be extended to Plaintiff's First, Fifth, Sixth and Eighth Amendment claims in this action. Since no *Bivens* remedy exists, there are no facts that Plaintiff could plead to cure the deficiencies in his complaint, and it would be futile to provide Plaintiff with an opportunity to amend. *Lopez v Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012).

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's complaint be dismissed without leave to amend for failure to state a claim.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's

---

claims against unrelated parties in a single action. Fed.R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. Id. at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party. Plaintiff's complaint joins claims which are unrelated. The claims for conduct related for early release are unrelated to the conditions of confinement and are unrelated to the mail/access to court claims and retaliation claims. As Plaintiff is attempting to bring multiple claims that arose from different and unrelated occurrences, his complaint violates Federal Rules of Civil Procedure 18 and 20.

Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 29, 2021**                    /s/ *Barbara A. McAuliffe*
                                                        UNITED STATES MAGISTRATE JUDGE